IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| JOHN CLEARY and | ) | |
| CHERYL CLEARY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 05-0310-CV-W-REL |
| | ) | |
| ACME FLOORING COMPANY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER GRANTING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT
## AND DENYING PLAINTIFFS' MOTION FOR LEAVE
## TO AMEND THE COMPLAINT

Before the court is defendant's motion for summary judgment on the
ground that plaintiffs cannot establish causation. I find that there remain no
genuine issues of material fact and that plaintiffs are unable to establish the
essential element of causation. Therefore, defendant's motion for summary
judgment will be granted.

## I.     BACKGROUND

In December of 2002, plaintiffs' house was damaged by an electrical fire.
As part of plaintiffs' post-fire renovation, they hired defendant, Acme Flooring
Company, Inc., ("Acme") to install and finish new wood flooring. On February
23, 2004, two Acme employees arrived at plaintiffs' house and sanded the newly-
installed wood flooring in preparation for staining. Before leaving for the night,
the Acme employees placed a bag of sawdust on the concrete porch outside the

front of plaintiffs' house. Later that night a fire started on the rear side of the house, on or near a deck. The fire completely destroyed plaintiffs' house.

On March 3, 2005, plaintiffs filed a negligence action against defendant in the Circuit Court of Jackson County, Missouri, alleging that Acme employees negligently left a bag of sawdust on the rear deck of the house which spontaneously combusted and started the fire that destroyed the house. Plaintiff Cheryl Cleary alleges negligent infliction of emotional distress, and plaintiff John Clearly alleges loss of consortium.

On April 6, 2005, defendant removed the case to federal court. Defendant filed the instant motion for summary judgment on February 17, 2006. In support of its motion, defendant states that no evidence supports plaintiffs' allegation that Acme employees left a bag of sawdust on the rear deck of plaintiffs' house, and no evidence supports plaintiffs' allegation that a spontaneously combusting bag of sawdust caused the fire. "Without this evidence, plaintiffs cannot establish the required element of causation."

On March 6, 2006, plaintiffs filed a response to defendant's motion for summary judgment. In their motion, plaintiffs seek leave to amend their complaint to add a bailment-based *res ipsa loquitur* theory of recovery.

On March 20, 2006, defendant filed a reply, objecting to plaintiffs' motion to amend their complaint as both untimely and unfounded in law since houses cannot be the subject matter of bailments.

Case 4:05-cv-00310-REL   Document 38   Filed 03/28/06   Page 2 of 23

## II.  STANDARD FOR SUMMARY JUDGMENT

Rule 56(c), Federal Rules of Civil Procedure, permits summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

The key to determining whether summary judgment is proper is ascertaining whether there exists a genuine issue of material fact.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists if:  (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party.  <u>American Academy of Family Physicians v. United States</u>, 75 A.F.T.R.2d 95-1709 (W.D. Mo. 1995), <u>aff'd</u> 91 F.3d 1155 (8th Cir. 1996).  The party moving for summary judgment has the burden of proving that these requirements for summary judgment have been met.  <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970).

In a summary judgment analysis, a court must first consider whether there are any issues of fact.  If the only issues are issues of law, then summary judgment is appropriate.  <u>Disesa v. St. Louis Community College</u>, 79 F.3d 92, 94 (8th Cir. 1996).  If issues of fact are raised, a court must consider whether these issues are material to the outcome of the case.  Materiality is identified by the substantive law that is to be applied.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at

248.  Factual disputes that are collateral to the substantive law will not preclude summary judgment.  <u>Id</u>.

In addition to the requirement that a dispute of fact be material, the dispute must also be genuine.  A dispute of fact is considered genuine if the non-moving party has produced sufficient evidence such that a reasonable jury could return a verdict for that party.  <u>Id</u>. at 249.  When considering a motion for summary judgment, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in its favor.  <u>Id</u>. at 255.  If the evidence submitted by the non-moving party is merely colorable or is not significantly probative, then summary judgment may be granted.  <u>Id</u>. at 249-250.

Where the party moving for summary judgment does not bear the burden of proof at trial, that party must show "that there is an absence of evidence to support the non-moving party's case."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).  This burden is met when the moving party identifies portions of the record demonstrating an absence of a genuine issue of material fact.  <u>Id</u>. at 323.  If the moving party meets the requirement, the burden shifts to the non-moving party who must set forth specific facts showing that there is a genuine issue for trial.  <u>Anderson v. Liberty Lobby, Inc.</u>, 474 U.S. at 248.  The trial judge then determines whether a trial is needed -- "whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  <u>Id</u>. at 250.

4

### III.  UNCONTROVERTED FACTS

Below, typed in bold, are the facts offered by defendant which I find to be

uncontroverted by the record before me.

**1.      A house owned by John and Cheryl Cleary, located at 8600 Lee's Summit Road in Lee's Summit, Missouri, was damaged by a fire in December of 2002.**

Plaintiffs do not dispute this fact.

**2.      As part of the rebuilding process after the 2002 fire, the plaintiffs hired Acme Flooring Company, Inc., to install and finish new wood floors.**

Plaintiffs do not dispute this fact.

**3.      The plaintiffs' house was destroyed by a fire the night of February 23, 2004.**

Plaintiffs do not dispute this fact.

**4.      On the date of the 2004 fire, Acme employees arrived at the plaintiffs' house between 3:30 and 4:00 p.m., and sanded the wood floors.**

Plaintiffs do not dispute this fact.

**5.      John Cleary had been working at the house the day of the fire and left his house the afternoon before the night of the fire at approximately 5:00 p.m.**

Plaintiffs do not dispute this fact.

**6.      Mr. Cleary returned to the house the night of the fire, before the fire, at approximately 8:00 p.m. and left approximately 15 minutes later.**

Plaintiffs do not dispute this fact.

**7.**     John Cleary did not see any bags of sawdust on the back deck of the house at any time prior to the fire.

Plaintiffs do not dispute this fact.

**8.**     John Cleary believes a bag of sawdust was placed on the back deck based on Tim Pigue's conversation with Acme employees the day after the fire and statements by Mr. Cleary's homeowner's insurer's retained fire investigator.

Plaintiffs do not dispute this fact.

**9.**     Tim Pigue is a contractor who performed work on the Clearys' house during the rebuilding process prior to the 2004 fire.

Plaintiffs do not dispute this fact.

**10.**     Mr. Pigue worked at the plaintiffs' residence the day of the fire, first leaving at approximately 4:30 p.m.

Plaintiffs do not dispute this fact.

**11.**     When Mr. Pigue left the plaintiffs' house the day of the fire at approximately 4:30 p.m., he did not see any bags of sawdust on the back deck.

Plaintiffs do not dispute this fact.

**12.**     Mr. Pigue returned to the Clearys' house the evening of the fire, prior to the fire, between 7:30 and 8:00 p.m.

Plaintiffs do not dispute this fact.

**13.**     When Mr. Pigue was present at the Clearys' house between 7:30 and 8:00 p.m. the evening of the fire, prior to the fire, he did not see a bag of sawdust on the back deck of the plaintiffs' house.  He was in a position to see the back deck, but he did not look at the back deck.

Plaintiffs do not dispute this fact with the addition of the final sentence which is contained in Mr. Pigue's deposition.

**14.    Mr. Pigue has no knowledge whatsoever that any bags of sawdust were on the deck to the rear of the Clearys' house the night of the fire.**

Plaintiffs do not dispute this fact.

**15.    After the fire Mr. Pigue had one conversation with an Acme employee in which bags of sawdust were discussed.**

Plaintiffs do not dispute this fact.

**16.    The one mention of bags of sawdust occurred when Don Uber, Acme's Vice President of Sales, while speaking with Mr. Pigue over the phone the morning after the fire, asked where the bags of sawdust were placed and mentioned the possibility that a bag of sawdust was left on the back deck.**

Plaintiffs do not dispute this fact.

**17.    During this phone call between Mr. Uber and Mr. Pigue, Mr. Uber did not tell Mr. Pigue that he had any proof that a bag of sawdust was placed on the back deck.**

Plaintiffs do not dispute this fact.

18.    When Mr. Uber mentioned the possibility that a bag of sawdust had been left on the back deck, Mr. Uber had not yet spoken with the Acme employees who were present at the Cleary's house the day of the fire.

Plaintiffs dispute this fact.

In support of this fact, defendant points to the deposition of Tim Pigue, page 86, lines 10-18; page 87, lines 18-25; and page 88, line 1. Plaintiffs dispute the fact by pointing to the deposition of Tim Pigue at page 85.

Page 85 of Mr. Pigue's deposition does not provide evidence to contradict this fact. However, page 86 through 88 of the deposition do not establish proof of this fact; therefore, I cannot find that it is undisputed.

The portions of the deposition cited by defendant read as follows:

Q. Did he say that he had any proof that there was a bag of sawdust actually placed on the back deck?

A. No. He -- his comment to me was he was going to question where he had positioned the bags of sawdust. And I could only confirm the one in front. I never looked on the back deck when I came back at around 7:30 -- between 7:30 and 8:00 o'clock that night.

Q. Okay. Did you ever have any future conversations with Mr. Uber about whether or not he did in fact question the Acme employees or the Acme sanders as to whether or not they had placed a bag of sawdust on the back deck?

A. Did I have any future conversations with Mr. Uber?

Q. About that, yes, sir.

A. No. Not that I can recall.

This testimony establishes that Mr. Pigue did not talk to Mr. Uber about whether Mr. Uber talked to the Acme employees. It does not establish that Mr. Uber had not spoken to the Acme employees.

**19. Plaintiffs designated four experts on the issue of causation: Gene Padgitt, Al Cowan, Michael Schlatman, and plaintiff John Cleary.**

Plaintiffs do not dispute this fact.

**20. Plaintiff John Cleary admitted that he is not qualified to perform a fire investigation.**

Plaintiffs do not dispute this fact.[1]

**21. Gene Padgitt states in his report that he cannot give a conclusive opinion as to the cause of the fire.**

---

[1]Plaintiffs admit this paragraph "but states he is capable of doing a cause and origin analysis and failure mode analysis." In support of this, plaintiffs cite John Cleary's deposition at page 2. However, no page 2 is included in any of the exhibits that were provided to the court.

Plaintiffs do not dispute this fact.

**22.     Al Cowan states in his report that a power receptacle above the fireplace on the rear wall of the house near where the fire started cannot be eliminated as a cause of the fire.**

Plaintiffs do not dispute this fact.

**23.     Al Cowan states in his report that a television in the alcove above the fireplace on the rear wall of the house near where the fire started cannot be eliminated as a cause of the fire.**

Plaintiffs do not dispute this fact.

**24.     Mr. Cowan's report does not mention a bag or bags of sawdust.**

Plaintiffs do not dispute this fact.

**25.     Mr. Schlatman, the fire investigator hired by the plaintiffs' homeowner's insurer, states in his report that the cause of the fire at the plaintiffs' house is undetermined.**

Plaintiffs do not dispute this fact.

**26.     The Kansas City, Missouri Fire Department Fire Marshal's Office investigated the cause of the fire and concluded that a short-circuit in an electronic fireplace installed in plaintiffs' house started the fire.**

Plaintiffs do not dispute this fact.

## IV.     *ADDITIONAL UNCONTROVERTED FACTS*

In their response, plaintiffs offered additional uncontroverted facts. Below are those facts which I find to be undisputed based on the admissible evidence before me.

9

**1.     Plaintiff John Cleary is a mechanical engineer with specialized training in failure mode analysis.**

Defendant does not dispute this fact.

**2.     Plaintiff has testified under oath he is capable of determining whether something was wired incorrectly or not wired in or not a part of the cause of the fire.**

Defendant does not dispute this fact.

**3.     The plugs in the home were not energized and only the overhead wiring was energized.**

Defendant does not dispute this fact.

4.     Cleary's investigation concluded "during the process of sanding the floor, they put bags of sawdust on the back deck."

In support of this fact, plaintiffs cite John Cleary's deposition at page 27. Mr. Cleary testified that he never saw any bags of sawdust on the back deck, and no one ever told him that bags of sawdust were going to be placed on the back deck. He said, "I believe -- I bet your -- if we had the truth of it, that they probably unloaded their machine out there from the job they just came from before they brought it in." Mr. Cleary's "conclusion" is not the conclusion of an investigation, it is his speculation based on a conversation with Tim Pigue who relayed the contents of a conversation he had with another person. Nothing in that conversation is admissible through Mr. Cleary as it is clearly hearsay. Additionally, the conversation contains nothing but a suggestion that the possibility that sawdust was placed on the back deck should be investigated. There was never an indication that sawdust was indeed placed on the back deck by anyone.

5.     Tim Pigue relayed the conversation with the owner that they were concerned because the workers had placed bags of sawdust outside the sunroom deck.

In support of this fact, plaintiffs cite John Cleary's deposition at page 27. For the same reasons as stated in proposed fact number 4, there is no evidence of this fact. Mr. Cleary testified that Mr. Pigue told him that Mr. Pigue had talked to someone who was concerned that bags of sawdust had been placed outside the sunroom. The conversation between that

10

person and Mr. Pigue is inadmissible hearsay, and Mr. Cleary did not testify that anyone said sawdust had been placed on the deck. He testified that Mr. Pigue had a conversation with someone about the possibility that sawdust had been placed on the deck.

6.      The only room considered a sunroom is the room adjacent to the back deck.

In support of this fact, plaintiffs cite the deposition of John Cleary at page 28. Mr. Cleary testified as follows: "I'm thinking that they thought the room that they were sanding was a sunroom because we had it totally enclosed in glass. They got there at about 3:30 with the sun setting in the west shining in there."

The reference to the sunroom was Mr. Cleary's hearsay statement that Mr. Pigue said that someone else told him they were concerned that someone may have put bags of sawdust outside the sunroom. It is Mr. Cleary's speculation as to what room that unidentified person was referring to, and Mr. Cleary's testimony about the conversation is inadmissible hearsay.

7.      Pigue related to Cleary that the Acme people were concerned because there were "bags of sawdust outside the sunroom."

In support of this fact, plaintiffs cite Mr. Cleary's deposition at page 29. The deposition testimony of Mr. Cleary at pages 28 and 29 read as follows:

A.      There was a call that Tim Pigue had made that morning to Acme, to the gentleman that he did business with all the time, to let them know there is no point in sending the guys out because the house had burned down. And in that message, without going through all of it, is that he had -- this gentleman said he'd call Tim back, and he called Tim back, and I don't know. You'll have to talk to Tim about that, about the exact conversation. But in this conversation was that -- because that guy was concerned -- that they had placed the bags of sawdust outside the sunroom.

* * * * *

11

Q.   And did you say that you -- your understanding is that Tim was told by Acme people that there were bags of sawdust outside the sunroom?

A.   Outside the sunroom.

There is no admissible evidence that bags of sawdust were placed outside the sunroom. The conversation Mr. Cleary testified about is inadmissible hearsay and does not state specifically that anyone said bags of sawdust were placed there, only that there was a concern that bags of sawdust had been placed there.

**8.    Based on the electrical not being energized and the statements that the bags of sawdust were put outside on the back porch and the origin of the fire being the back deck, John Cleary determined that the cause of the fire was related to bags of sawdust placed on the back deck.**

Defendant does not dispute this fact.

**9.    Cleary discounts the fire investigators' conclusion that the fire was caused by electrical because the plugs were not energized.**

Defendant does not dispute this fact.

10.    The last workers on the job site before the fire were the Acme employees.

In support of this fact, plaintiffs cite Mr. Pigue's deposition at page 48. There is nothing on page 48 of Mr. Pigue's deposition which states that the last workers on the job site before the fire were the Acme employees.

11.    In Pigue's conversation with the owner of Acme one of his first concerns was to contact the sanders and find out where the bags of sawdust were.

In support of this fact, plaintiffs cite Mr. Pigue's deposition at page 65. Mr. Pigue's testimony on page 65 reads as follows:

Q.   After Don said he'd call the sanders, do you remember anything else that you talked about?

A.   Not at that point, I do not.

12

Q. So in the initial phone call you made to Acme Flooring after the fire, other than to talk with Mike, who was stunned, then transferred you to Don Uber; and in talking with Don Uber, when Don said he would call the sanders, do you remember anything else that you talked about?

A. Not during the course of that conversation.

Q. Okay. When was the next conference you had with anyone affiliated with Acme after the fire at the Clearys'?

A. Approximately half an hour later.

Q. And do you remember what was said in that conversation?

A. The essentials were, you know, he wanted to call and contact the sanders and, you know, see if they could recall what had happened, if they knew of anything, might have mistakenly done something, you know. And then at that point that's when someone raised the question of, you know, where were the bags of sawdust.

There is nothing in this testimony that states that one of Pigue's first concerns was the placement of bags of sawdust. In fact, the issue of sawdust was not raised until the second conversation, and Mr. Pigue did not testify that he brought up that issue or asked any question about where bags of sawdust had been placed.

**12. Pigue saw no bags of sawdust in a metal container** which is required by standards.

In support of this fact, plaintiffs cite the deposition of Mr. Pigue at page 76. That testimony reads as follows:

Q. On the day of the fire, you indicated that you may have seen a bag of sawdust on the front porch; is that correct? Or did you see a bag of sawdust on the front porch?

A. I saw a bag, yes.

Q. Was that bag in a metal container?

A. No.

13

There is nothing in this testimony which mentions that standards require metal containers. Therefore, that portion of this fact has not been established.

**13.  The sanders working for Acme were seen by Tim Pigue with cigarettes and cigarette lighters.**

Defendant does not dispute this fact.

**14.  In the second conversation with Mr. Uber of Acme, Mr. Uber mentioned the possibility that a bag of sawdust may had been placed on the back deck. Mr. Uber never said he had any proof there was a bag of sawdust actually placed on the back deck.**

Defendant does not dispute this fact with the added explanation in the second sentence, which appears in Mr. Pigue's deposition at page 86 immediately following the testimony cited by plaintiffs.

**15.  Eugene R. Padgitt, a Missouri State Certified Fire Investigator, in his report on the cause of the fire, states as follows: "There are no visible marks on the inside of the fireplace unit indicating that the fire started at the fireplace, and there are no distinctive burn patterns to follow. It appears that the fire started on the outside of the home on the right side of the fireplace."**

Defendant does not dispute this fact.

**16.  Al Cowan, Cowan Engineering & Consulting, determined that the electrical wiring to the fireplace showed no sign of failure. Mr. Cowan determined that the wiring could be eliminated as a cause of the fire.**

Defendant does not dispute this fact.

**17.  Consolidated Forensic Investigations stated, "It is our opinion that the fire originated on the exterior deck. There is no evidence that the fire was a result of an intentional act or accident due to a malfunction of the fireplace or electrical components."**

Defendant does not dispute this fact.

14

18.     Tim Pigue advised the fire investigators that the Acme personnel had placed a bag of sawdust on the rear (west exposure) sundeck or sunroom prior to their leaving.  The front porch is on the northeast area of the home.

In support of this fact, plaintiffs point to the report of Consolidated Forensic Investigations, Inc., which states that "Additional information received from the insured and Mr. Tim Pigue (the general contractor remodeling the structure) was that Acme personnel had placed a bag of sawdust on the rear (sundeck or sunroom) prior to their leaving."

This exhibit does not establish the fact as offered.  The report by Consolidated Forensic Investigations cannot be used to prove that Acme personnel left a bag of sawdust on the deck because the statement is hearsay.  In addition, the report states that the information was provided by "the insured" and Mr. Tim Pigue.  Plaintiffs are the insured, and Mr. Cleary testified that he believes a bag of sawdust must have been left on the deck because he has no other explanation for the fire at his house.  Therefore, his statement to Consolidated Forensic investigations does not establish that a bag of sawdust was left on the deck by Acme employees.  In addition, Mr. Pigue testified that he has no information that Acme employees left a bag of sawdust on the deck.

**19.     The standard of the sanding industry requires bags of sawdust to be placed in metal containers.**

In support of this fact, plaintiffs point to Clark American Sanders Operator Safety Instructions which state that sawdust should be placed in metal containers as it could ignite or explode.  Defendant denied this fact without citing to anything in the record; therefore, the fact will be considered undisputed.

## V.     *NEGLIGENCE*

Defendant argues that it is entitled to summary judgment on plaintiffs'

negligence claim because plaintiffs are unable to establish the required element

of causation.

Plaintiffs' complaint alleges the following:

15

5.     That at said time and place, Defendant[] negligently stored sawdust in plastic bags on the deck attached to the structure owned by Plaintiffs at 8600 Lee's Summit Road, Lee's Summit, Missouri.

6.     That said negligent acts of Defendant in storing sawdust in plastic bags, caused spontaneous combustion within the bags of sawdust, resulting in a fire which damaged and destroyed Plaintiff[s'] property.

7.     That defendant was negligent in failing to store the sawdust in metal containers, away from the premises in that:

(a)     Defendant negligently failed to follow the Rules and Regulations established by the National Wood Flooring Association;

(b)     Defendant negligently failed to follow the Operator Safety Instructions of Clark American Sanders, the manufacturer of the equipment used by Defendant.

There are no other negligent acts alleged by plaintiffs in their complaint against defendant.

In order to establish a claim of negligence, plaintiffs must prove that the defendant had a duty to protect plaintiffs from injury, that defendant failed to perform that duty, and that this failure proximately caused plaintiffs' injury. Owens v. Unified Investigations & Sciences, Inc., 166 S.W.3d 89, 91 (Mo. Ct. App. 2005), citing L.A.C. ex rel. D.C. v. Ward Parkway Shopping Center Company, L.P., 75 S.W.3d 247, 257 (Mo. banc 2002). To establish a causal connection between the alleged negligent act and the injury, plaintiffs must show both causation in fact and proximate cause. Payne v. City of St. Joseph, 135 S.W.3d 444, 450 (Mo. Ct. App. 2004); Poloski v. Wal-Mart Stores, Inc., 68 S.W.3d 445, 449 (Mo. Ct. App. 2002).

16

The test for causation in fact is the "but for" test. <u>Payne v. City of St. Joseph</u>, 135 S.W.3d at 450; <u>Bond v. California Compensation and Fire Co.</u>, 963 S.W.2d 692, 697 (Mo. Ct. App. 1998). The "but for" test for causation provides that the defendant's conduct is a cause of the event if the event would not have occurred "but for" that conduct. <u>Payne v. City of St. Joseph</u>, 135 S.W.3d at 450. Causation in fact is an issue for the jury if sufficient evidence is presented from which the jury could reasonably find that the plaintiffs' injury was a direct result of the defendant's negligence. <u>Id</u>.

The test of proximate cause is whether the negligence is an efficient cause which sets in motion the chain of circumstances leading to the plaintiffs' damages. <u>Id.</u>; <u>Simonian v. Gevers Heating & Air Conditioning, Inc.</u>, 957 S.W.2d 472, 475 (Mo. Ct. App. 1997). The test is whether, after the occurrence, the injury appears to be the reasonable and probable consequences of the act of the defendant. <u>Id.</u> Proximate cause is a question of law for the trial court. <u>Payne v. City of St. Joseph</u>, 135 S.W.3d at 450.

Evidence of causation must be based on probative facts, not on mere speculation or conjecture. <u>Payne v. City of St. Joseph</u>, 135 S.W.3d at 450; <u>Bond v. California Compensation & Fire Co.</u>, 963 S.W.2d at 697.

The undisputed facts outlined above establish that there is nothing from which a jury could reasonably infer that any act of defendant's employees caused the fire at plaintiffs' house. In other words, there is no evidence in the record, direct or circumstantial, from which a jury could reasonably conclude that the

17

plaintiffs' damages were the direct result of the defendant's actions.

The undisputed evidence establishes that Tim Pigue, the contractor, was at plaintiffs' house between 7:30 p.m. and 8:00 p.m. Mr. Pigue did not see any bags of sawdust on the back deck of plaintiffs' house. Mr. Pigue has no knowledge that any bags of sawdust were placed on the back deck. Plaintiff John Cleary was at his house from 8:00 p.m. until about 8:15 p.m., after the Acme employees had left and before the fire started. Mr. Cleary did not see any bags of sawdust on the back deck.

The only mention of bags of sawdust was during a conversation between Mr. Pigue and Don Uber, Acme's Vice President of Sales. During that conversation, Mr. Uber asked where the bags of sawdust had been placed and whether there was a possibility the bags had been placed on the back deck. Mr. Uber had no knowledge that any bags of sawdust had been placed on the back deck.

Of the four experts who attempted to determine causation, Gene Padgitt cannot give a conclusive opinion as to the cause of the fire; Michael Schlatman cannot give a conclusive opinion as to the cause of the fire; Al Cowan believes it is possible that a power receptacle above the fireplace on the rear wall of the house or a television in the alcove above the fireplace on the rear wall of the house could be the cause of the fire; and the Kansas City, Missouri, Fire Department Fire Marshal's Office concluded that a short circuit in an electronic fireplace installed in the house started the fire. No expert has concluded that spontaneous

18

combustion of bags of sawdust on the back deck was the cause of the fire.

Plaintiff John Cleary is a mechanical engineer capable of determining whether something was wired correctly. The plugs in his home were not energized at the time of the fire, but the overhead wiring was. Because the plugs were not energized, Mr. Cleary disagrees with the conclusion of the Fire Marshal. Mr. Cleary believes that the fire was caused by bags of sawdust spontaneously combusting because someone mentioned that possibility in a telephone conversation with Mr. Pigue.

Mr. Cleary has no evidence to support his belief that bags of sawdust were placed on the back deck and spontaneously combusted. There is no evidence that anyone saw bags of sawdust on the back deck, even though multiple people were there after the sanders left for the day. No investigator found any evidence that bags of sawdust were on the back deck when the house caught fire. And no investigator determined that the fire was caused by spontaneous combustion of bags of sawdust on the back deck of the house.

I find that there is no genuine issue of material fact, and that defendant is entitled to summary judgment because plaintiffs cannot establish the requisite element of causation.

## VI.    NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

In order to establish a claim for negligent infliction of emotional distress, plaintiff must show that (1) defendant's conduct was negligent, (2) defendant should have realized that the conduct involved an unreasonable risk of causing

19

plaintiff emotional distress, and (3) the conduct caused medically diagnosable and medically significant emotional distress.  <u>Young v. Stensrude</u>, 664 S.W.2d 263, 265 (Mo. App. 1984).

As was discussed in greater detail in Section V. above, plaintiffs are unable to establish that defendant's conduct was negligent.  Because plaintiff cannot establish each and every element of negligent infliction of emotional distress, defendant's motion for summary judgment on this count will be granted.

## VII.  LOSS OF CONSORTIUM

A spouse's claim for loss of consortium is derivative in nature and cannot exist in the absence of a viable claim on the part of the injured spouse to recover for her own injuries.  <u>Wendt v. General Accident Insurance Company</u>, 895 S.W.2d 210, 218 (Mo. Ct. App. 1995).  Although the claims are independent, separate, and distinct in the sense that they seek redress for separate and distinct types of damage, both claims are necessarily dependent upon the injured spouse's right to recover from the defendant for her own injuries.  Therefore, where the court has determined that the injured spouse has no viable claim, her spouse cannot recover for loss of consortium.

In this case, plaintiff Cheryl Cleary has no viable cause of action for negligent infliction of emotional distress.  Therefore, her husband, plaintiff John Cleary may not recover for loss of consortium.

## VIII.  RES IPSA LOQUITUR

Plaintiffs, in their response, seek leave of court to file an amended complaint adding a claim of res ipsa loquitur.

Res ipsa loquitur is a rule of evidence which allows a jury to infer negligence when three elements combine:  (1) the incident normally does not occur without negligence; (2) the incident was caused by an instrumentality under the control of the defendant; and (3) the defendant has superior knowledge about the cause of the incident.  Weber v. McBride & Son Contracting, 182 S.W.3d 643, 645 (Mo. Ct. App. 2005).  Missouri law provides that, generally, damage cases resulting from a fire require proof of specific negligence and are not properly submitted under a res ipsa loquitur theory.  Shannon v. Welch, 858 S.W.2d 748, 751 (Mo. Ct. App. 1993); Wadlow v. Donald Lindner Homes, Inc., 654 S.W.2d 644, 648 (Mo. App. 1983).

Defendant argues that plaintiffs cannot establish the requirements for a res ipsa loquitur theory because they cannot establish that the incident was caused by an instrumentality under the control of the defendant.  Plaintiffs attempt to satisfy this element by arguing that a bailment relationship existed.  Under Missouri law, a bailment is "the delivery of personal property in trust."  Scherrer v. Plaza Bowl Inv. Co., 277 S.W.2d 695, 698 (Mo. Ct. App. 1955).  Personal property legally does not include houses, which are real property.  Riverside-Quindaro Bend Levy Dist., Platte County, Missouri v. Missouri Am. Water Co., 117 S.W.3d 140, 157 (Mo. Ct. App. 2003).

21

Furthermore, the burden-shifting presumption urged by plaintiffs applies only when the alleged bailee has sole, actual, and exclusive physical possession of the bailment. <u>D.S. Sifers Corp. v. Hallak</u>, 46 S.W.3d 11, 18 (Mo. Ct. App. 2001). Exclusive control means the right to control, as opposed to physical control <u>McDowell v. Southwestern Bell Telephone Co.</u>, 546 S.W.2d 160, 168 (Mo. Ct. App. 1976). There is no evidence that Acme employees had any right to control plaintiffs' house. The workers had no ownership or other propriety rights in plaintiffs' house, and indeed people other than Acme employees were on the premises at times before the fire and when Acme employees were not present.

Finally, I point out that the scheduling order in this case sets August 31, 2005, as the deadline for amending the pleadings, and that date was taken from the proposed scheduling order signed by all parties. Plaintiffs have offered no justification for amending the complaint less than two months before the trial is set to begin.

## IX.   *CONCLUSION*

Based on the above findings of undisputed facts and the law as discussed in sections V through VIII, I find that there remain no genuine issues of material fact, that plaintiffs are unable to establish causation, and that defendant is entitled to summary judgment on all counts. I further find that plaintiffs cannot successfully use the theory of res ipsa loquitur, that plaintiffs' bailment theory is inapplicable, and that there is no justification for amending the complaint to add those theories of recovery. Therefore, it is

22

ORDERED that defendant's motion for summary judgment is granted.  It

is further

ORDERED that plaintiffs' motion for leave to amend the complaint is

denied.


_/s/ Robert E. Larsen_____
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
March 28, 2006

23